## HOWARD v. STATE.

### AND

## HOWARD v. STATE.

1. CRIMINAL LAW: *Obstructing highways.*
It is a misdemeanor, punishable by common law procedure, to obstruct a road which has become a public highway by long continued use by the public.

2. ROADS AND HIGHWAYS: *By prescription.*
A road becomes established as a public highway by prescription, where the public, with the knowledge of the owner of the soil, has claimed and continuously exercised the right of using it for a public highway for the period of seven years, unless it was so used by leave, favor or mistake; and this though the public travel may have somewhere slightly deviated from the original track by reason of any obstacle that may have been placed in it.

3. SAME: *Statutory road by adoption.*
A road which has been long used as a public road and has been recognized as such by the county court making it a part of a road district and appointing an overseer to work it, is *prima facie* a statutory highway.

4. SAME: *Order establishing, not assailable collaterally.*
The judgment of the county court establishing a public highway is not assailable collaterally for not providing compensation to the land owner for the land taken, though he was not *personally* notified of the proceedings as required by the statute.

APPEAL from *Lonoke* Circuit Court.
Hon. F. T. VAUGHAN, Judge.

*Sam W. Williams* for Appellants.

No statutory road was established, first, because there was no appropriation for the public use of any specified land, by defining it, valuing and paying for it. Private property cannot be taken in this high-handed manner without compensation. The instruction of the court on this point was erroneous and misleading. The securing or payment of compensation to land owners is jurisdictional. See *20 Ark., 561; 13 Id., 355.*

The seven years statute of limitations applicable to real estate does not apply to incorporeal hereditaments. The right to the public by user could only be acquired by twenty years continued, unchanged, uninterrupted use, over the same path, with the consent and knowledge of the owner. *Johnson & Bissell v. Lewis, Mss.*

Courts of equity always enjoin opening highways in advance of compensation. *High. on Inj., sec. 391.* Where a statute provides a particular mode of proceeding *in rem*, that mode must be followed strictly or the judgment is void *ab initio*, because rendered without jurisdiction. *4 Wait's Act. & Def., p. 188; Freeman on Judg., 606; 4 H. of L. Cas., 414.*

Compensation is prerequisite, a condition precedent to the right to the soil, otherwise the owner may reject it. *31 Ark., 494.* And the county court has no right to open a road, until the assessment and payment of the owner's damages.

*Jno. C. & C. W. England* for Appellants.

In this state there is no such thing as a highway by prescription. All roads must be established by order of the county court, after due notice, in the manner prescribed by statute.

The court erred in refusing to allow the witnesses to testify as to the manner the road was laid out, opened, etc. The statute requires notice to be given to the owners of the soil, etc., and that damages shall be estimated, etc. *Sec. 5930 et seq., Mansf. Dig.* It is only in this way the courts get juris-

diction. *Ib., sec. 5933.* The court erred in admitting the record order establishing this as a road district, for it was established by evidence that this road had never been viewed, located, staked out, or in any way designated. The order of the county was inadmissible because of uncertainty. No one could lay out this road from the description given. Nor could any one tell when he was obstructing it.

This was not a common law road. It was never dedicated by the owner to the public use, or accepted by the public, nor had the public acquired the absolute right by long usage. *Thomp. Highw., 62.*

Review the testimony and contend that appellants would not have been convicted, were it not for the erroneous instruction of the court, that seven years was the period of limitation. That twenty years is the period, see *Thompson on High., pp. 53 –62; Wait's Act. & Def., 716, sec. 8; 22 Ala., 190; 19 Barb., 179; 22 Md., 526; 23 Wis., 548.*

*Dan W. Jones,* Attorney General, for Appellee.

There are but two questions really in the case.

1. Can the public obtain a title to the road by prescription?

2. Did the court err in permitting the state to read to the jury the record of the county court establishing the road district and in disallowing the appellants to question the regularity of the proceedings of the said county court?

The period of prescription is made by analogy seven years. *3 Washb. Rl. Pro., 449; Sibley v. Ellis, 11 Gray, 417; Washb. Eas., sec. 4, pp. 111–12; Parker v. Foote, 19 Wen., 309; Curtis v. Keesler, 14 Barb., 511; Caper v. Smith, 19 Serg. & Rawl., 26; Tracy v. Atherton, 36 Ver., 503.*

A dedication to the public is more readily presumed than a grant to an individual. *27 Ver., 265.*

·27——47

The appellants do not dispute that the public can obtain a prescription right. It was not necessary that the exact spots of ground should be trodden all the time. *Elkin v. State, 2 Humph., 543.*

The county court being one of record the regularity of its proceedings is presumed. *Pierce v. Edington, 38 Ark., 151.* Certainly it would have been highly improper to have collaterally retried the questions which had been before the county court some years prior. The appellants should have taken some direct legal steps for vacating the road instead of forcibly preventing the overseer from working it. *Draper v. Mackey, 35 Ark., 497.*

An order of the county court appointing an overseer for a particular part of the road is evidence that during the appointment the road is a public road. *State v. Moore, 23 Ark., 550; State v. Hagood, Ib., 553.*

*Sec. 5927, Mansf. Dig.,* was enacted for the benefit of those who had no title to a road and wish to open one. So here, the public having a right by prescription, it was really immaterial whether the action of the county court was regular or not; it was merely confirmatory of that title, but at the same time became record evidence of the claims of the public.

The instructions given, taken altogether, were unusually clear, and were fair to the appellants in every particular.

COCKRILL, C. J. These two cases have been argued and submitted together. They are prosecutions for obstructing a public highway. The indictment, in the second case, charges that the highway obstructed was established by the order of the county court. In the first case the indictment contains two counts, one corresponding with the indictment in the other case except as to the time of the commission of the offense, and the other charging that the road obstructed was a highway by com-

mon law, the indictment specifying that it was intended to charge but one offense.

The defendants were convicted in both cases, but the conviction in the second case was under the common law count. The obstruction consisted of the erection of wire fences across the road. The evidence was the same in both cases, and for convenience they have been argued as though there had been a separate conviction under each count of the second indictment, and it is convenient to treat the cases as counsel have done.

Obstructing the road was admitted, but it is claimed the state failed to prove that the road was a public highway. It was of course necessary that this should be done to warrant a conviction in either case.

I. Under the common law count the state undertook to prove the public character of the road by evidence of public user for a great number of years—one of the witnesses, who was thirty odd years of age, testifying that he had lived upon the roadside all his life, and that from his earliest recollection it had been used by the public as a highway.

*1. Obstructing highway.*

It is argued, however, in the outset that there can be no conviction in this state for obstructing a highway that is not a statutory road; but the statutes in regard to highways do not negative rights which may have been previously or subsequently acquired by the public, and they are not to be construed as doing away with the modes of establishing the existence of public roads recognized by the common law, or of abolishing the common law procedure against one for placing obstructions in them of such a character as to be a common or public nuisance. *State v. Holman, 29 Ark., 58; Bish. Stat. Cr., sec. 164; 2 Greenl. Ev., sec. 662; Day v. Allender, 22 Md., 511.*

The jury found that the road was a public highway by virtue of long continued use, and as the finding was upon dis-

cordant testimony, it cannot be disturbed, if the court gave them, in its charge, the proper guidance for reaching a conclusion.

The charge of the court on the question of user was as follows:

2. Highways by prescription.        "To establish a highway by prescription, there must be an actual public use, general, uninterrupted and continuous, under a claim of right, for a period of seven years, and this though the public travel may have slightly deviated from the originally established route by reason of any obstacle that may have been placed in said route, provided the owner of the soil acquiesced in the claim of the public rightfully to enjoy such privilege. The occasional use of the highway by the public without objection on the part of the owner will not of itself constitute a common highway."

The appellants presented a written prayer for a charge to the jury substantially the same as the above except that in place of seven it substituted twenty years as the period of public use to establish a highway. The court inserted seven in the place of twenty and gave the instruction as modified. Giving the instruction set forth and refusing the other as asked is assigned as error.

The question as to what use by the public will convert a road into a common highway is one upon which there is great diversity of opinion. Some of the adjudged cases deny that prescription has any application to highways at all; and others, while conceding that highways may derive a lawful existence from long continued use by the public under a claim of right, hold that use alone for any time, however long, of uninclosed prairie or timber land, cannot make a highway. The cases which agree that a highway may be established by user over any land whether wild or improved, differ as to the effect of the public user, and as to the length of time within which such use

with the acquiescence of the owner shall have the effect of creating a highway. A review of the decisions or even a statement of the leading reasons given for the several classes of cases would be of little practical utility. Nothing can be added to the learning on that subject at this day. Some of the mooted questions were determined by this court in the case of *Johnson et al. v. Lewis, ante p. 66*, but the determination of the question of time now under consideration was expressly waived, attention being called to the fact that incorporeal hereditaments are not within the terms of, or in other words, are not named in, the statute of limitations governing real actions.

The tendency of the American courts, however, to conform to the period fixed by the statute by analogy, is pointed out by the learned judge who delivered the opinion. Referring the curious to the text writers and the cases there cited for the arguments and discussion of the question, we are prepared (using the language of Judge Dillon in speaking for the court in *Anstoll v. Murray, 22 Iowa, 457,*) to say that "if the public, certainly where this is with the knowledge of the owner, has claimed and continuously exercised the right of using land for a public highway, for a period equal to that fixed by the statute for bringing actions of ejectment, their right to the highway as against such owner, is complete, there being no proof that the road was so used by leave, favor or mistake."

As seven years is the period that bars ejectment, we hold that the charge was right upon that point.

II. The only other objection the appellants have urged to the charge is that the jury are told, in effect, that a dedication may be presumed from use notwithstanding the public travel may have deviated at points from the old route.

The obstacles which changed the course of travel were two fences, which had been put across the road, by other parties, a few years before the indictments. Travel had been deflected

from the original road-bed just far enough to escape the obsta-
cle, the old road being resumed after a passage around the en-
closure.   But there was evidence to the effect that the road was
the prairie route between two towns, and that no part of the old
route was ever abandoned except that embraced in the enclosure,
and the obstruction now complained of was not on that part of
the road.   This objection to the instruction is not well grounded.
*Wyman v. State, 13 Wis., 663, 668.*

III.   Several objections are urged against the conviction
under the indictment based upon the statute.

**3.   Statutory road by adoption of county court.**   In order to prove the public character of the road in this
case, the state showed that it had been long used as a public
road in the manner already adverted to, and that the county
court had recognized it as such by making it a part of the road
district described in the indictment and appointing an overseer
to work it, prior to and in the year defendants had obstructed
it.   This was at least a *prima facie* showing of a statutory high-
way.   *McKibben v. State, 40 Ark., 480; State v. Hagood, 23
Ib., 553; State v. Hester, 21 Ib., 193; Michel v. State, 12 Tex.,
Ct. App., 108; Hall v. State, 13 Ib., 269; McWhorter v. State,
43 Texas, 666; State v. Ramsey, 76 Mo., 398; Plummer v. Ossi-
pee, 59 N. H., 55.*

**4.   Order Establishing, not assailable collaterally.**   The order showing the assignment of the road to a district
and the appointment of the first overseer was embraced in the
judgment of the county court declaring the road a highway.
They were made by the county court upon the coming in of
the report of the reviewers appointed by the court after a view
had been made and a route reported by viewers who had been
first appointed.   Objection was made to the introduction of the
orders and judgment in evidence upon the ground that they
were void and of no effect, because the judgment contained no
provision for compensation, or mention of assessment of dam-
ages, to the land-owners over whose land the proposed route
lay.   The refusal of the court to exclude the evidence was not
erroneous.

The jurisdiction to open and maintain highways is vested in the county courts. In making its orders in regard thereto, "the court acts judicially, and its judgment being pronounced in a matter affecting the public convenience is binding and conclusive on all persons who had no other than a public interest in the proceeding, held in common. with the rest of the community." *Murray v. Menefee, 20 Ark., 561; State v. Richmond, 6 Foster (N. H.), 232; Plummer v. Ossipee, supra; Cresswell v. Commr's Court, 24 Ala., 282; Miller v. Porter, 71 Ind., 521.* The right to compensation can be waived by the person interested and a judgment laying out a road can be avoided even in a direct proceeding only by those whose individual rights and interests have been disregarded. *Authorities supra.*

It did not appear when the orders were offered in evidence that the defendants were interested in any of the lands over which the road passed. Subsequently it was developed that they owned the land where the road was obstructed, and they offered to prove, but were not permitted, that their grantor resided on the land when the viewers acted, and that he had received no notice of the time and place of their meeting ; that he had not appeared to the proceedings for opening the road and had received no compensation for his land. The court also declined to instruct the jury that the judgment laying out the road was void as to the defendants if it made no provision for compensation for their land. The question whether such a judgment is open to collateral attack by the land-owner is thus presented.

In the case of *Roberts v. Williams, 15 Ark., 43,* this court on certiorari directed the quashal of an order of the county court opening a private road, because it made no provision for compensation to the complaining land-owner. But it does not follow that the order was regarded as a nullity. When the remedy by certiorari may be invoked, it is used for the correction of error apparent upon the face of the record. In the case cited the land-owner had made his claim for dam-

ages, the court had rejected it *in toto*, and the right of appeal from the judgment had been lost without his fault.  The court ruled that private property could not be taken for private or public use without compensation, and that the judgment of the county court was erroneous.  But in the subsequent case of *Turner v. C. & F. Ry., 31 Ark., 494*, it was held that where the statute gives a remedy for compensation in condemnation proceedings, the land-owner's right to compensation is confined to that remedy.  Now, if the county court had jurisdiction of the subject matter, and the land-owner was afforded the opportunity to assert his claim for compensation, but failed to do so after receiving the personal notice contemplated by the statute, it seems clear under this rule he would waive his right to compensation, and could not afterwards resist the right of the public to open the road.  *Dunlop v. Pulley, 28 Iowa, 469; Costello v. Burke, 63 Id., 361.*

It remains to be considered then, only whether he would be justified in making resistance if personal notice had not been served upon him.

The county court acquires jurisdiction in the first instance to take the initial steps for establishing a given highway upon the presentation of a petition by ten freeholders of the county after notice given by publication in a newspaper or by posters. When the court is satisfied that the notice required by statute has been given, three viewers may be appointed whose duty it is to view the route, assess the damages, and report to the court.  *Mansf. Dig., secs. 5927, et seq.*   It is made the duty of one of the parties petitioning for the road to give the land-owners or their agents, if residing in the county, personal notice of the time and place of the viewers' meeting.  It was this notice the appellants sought to prove had not been given, and the question is, does the want of it avoid the judgment of the county court.

The proceeding to open a highway possesses all the characteristics which distinguish a proceeding *in rem*. *Costello v. Burke, 63 Iowa, 361; Wilson v. Hathaway, 42 Ib., 173; Murray v. Menefee, 20 Ark., 566.*

The court acquires jurisdiction of the property which is the subject of adjudication before the viewers are required to act. They are only an executory arm of the court employed in the exercise of the jurisdiction already acquired, and an omission of duty, or error committed on their part, can be regarded in no stronger light than an erroneous exercise of jurisdiction by the court itself. No irregularity in the exercise of jurisdiction will avoid the judgment of the court. *Adams v. Thomas, 44 Ark., 267; Grignon v. Astor, 2 How., 319.*

The jurisdiction of the court is not dependent upon the subsequent notice to be given by the petitioner to the landowner, any more than the jurisdiction of the probate court is dependent upon the various steps as to notice and appraisement required by the statute in order to obtain an order for the sale of a decedent's lands in the course of administration. But we have frequently held that the omission of one or all of these prerequisites does not affect the validity of the order of sale. The land-owner cannot be said to be deprived of his right to be heard by the want of notice of the viewers' meeting. The assessment of damages by the viewers is not of itself binding upon him. It requires the judgment of the county court to give it any force or validity. It is made the duty of the court to see that the award of damages is just to the public and the individual, (*Mansf. Dig., sec. 5937,*) and the land-owner, who is a party by virtue of the publication, is thus afforded his day in court regardless of the report of the viewers.

In this view of the matter the judgment was erroneous and not void and afforded the defendants no justification for ob-

structing the road.    *Draper v. Mackey, 35 Ark., 497;    Wells on Jurisdiction, sec. 421.*

The judgment in each case will be affirmed.