## WYMAN vs. THE STATE.

```
13  663
103 277
13  663
f 109 616
```

Section 101, chapter 19, R. S. 1858, relates to the *willful* obstruction of a highway by a fence, building or other fixture, as well as to such obstruction by means of other things which are not fixtures. Sections 102 and 103 relates to encroachments upon highways by fences, buildings or other fixtures, where the encroachment is not in the nature of a *willful obstruction.*

A continued user of land for a public highway, with the consent of the owner, for twenty years, is conclusive evidence of a dedication.

Where various tracks had been thus used over open prairie land, and the owner of the land through which they ran sold all his land north of the middle line of one of said tracks, with an understanding that his vendee should build his south fence along the north side of said track, and after said fence was built enclosed his remaining land by a fence running along the south side of said track, it was *held,* that the presumption of dedication of a highway across said land was not defeated by the fact that the travel had not been confined to any one track, and that the jury might consider the conduct of the owner in building his fence along the line of said track, in arriving at his intention upon the subject of dedication.

ERROR to the Circuit Court for *Rock* County.

The nature of this case, the facts in evidence, and the instructions given and refused by the circuit court, are stated in the opinion of this court. It is deemed necessary to add only the following facts : that there was evidence tending to show that the land owned by the plaintiff in error (defendant below) on the south side of the alleged highway, had been fenced for more than a year before the alleged obstruc-

January Term, 1861.

WYMAN
v.
THE STATE.

tion, the fence running along the south line of such alleged highway; and that the circuit court, after instructing the jury as to the nature of a dedication of land for a highway, added, that they were " liberty to take into consideration the fact of the defendant's building his fence along the line of the present track, in order to arrive at his intention on the question of dedication;" which instruction was excepted to.

Verdict for the state.

*Knowlton, Prichard & Jackson*, for plaintiff in error.

*I. C. Sloan*, for defendant in error.

May 15.

*By the Court*, COLE, J.    This was an action brought under section 101, chapter 19, R. S., for the statute penalty of twenty-five dollars for obstructing a public highway.    It appears that the plaintiff in error formerly owned the land on both sides of the highway.    Some four or five years ago, he sold that portion lying north of the alleged highway to one McMichael.    He still owns the land on the south side of the road.    The obstruction complained of was a post and board fence placed across the highway so as to completely prevent its use by the public.    There does not seem to have been any serious contest about the fact that the plaintiff in error placed the fence across the street, and the nature of the obstruction shows that it was placed there to prevent all travel at that point.    The defense rests chiefly upon two grounds: 1st, that the *locus in quo* was not a public highway; and 2d, that building a fence across a public road is not placing an obstruction upon it, within the meaning and intent of the section under which this action is brought.    The case, therefore, involves a construction of the statute sued upon, as well as a consideration of some propositions of law embraced in the charge of the circuit court.

It appears from the record that after the state had rested, the defendant moved for a nonsuit, for the reason that there was no proof of any obstruction in the alleged highway, other than a fence; that there was no proof of any notice given requiring him to move the fence; and that under the proof made, no action could be maintained for the penalty imposed by the section declared on, because it did not ap-

pear that the alleged highway was a legal one. This mo-
tion was denied, and the defendant offered certain evidence
tending to show that the *locus in quo* was not a legal high-
way. Upon closing the case, the defendant asked the court
to instruct the jury as follows : " 1st. The statute provides
for two kinds of encroachments or obstructions of highways,
and two only. One class is that of fixtures ; the other, such
as in their nature are not and do not become fixtures or part
of the land upon which they are put. In this case, as there
is no claim of an obstruction other than a fence, the action
cannot be sustained, and your verdict must be for the de-
fendant. 2d. In order to entitle the plaintiff to maintain
this action, his proof must show that the defendant obstructed
some one of the classes or kinds of highways mentioned in
sections eighty-five and eighty-six of chap. 19 R. S.," cit-
ing those sections *verbatim.* The court refused to give these
instructions, for the reason, no doubt, that they were not
deemed to be correct expositions of the statutes. And we
think they were properly refused.

Section 101, chapter 19, declares that whoever shall will-
fully obstruct any highway, or fill up or place any obstruc-
tion in any ditch constructed for draining the water from any
highway, shall forfeit for any such offense a sum not exceed-
ing twenty-five dollars.

The next section provides that in every case where a high-
way shall have been laid out and opened, and the same has
been or shall be encroached upon by a fence, building or
other fixture, the supervisors shall make an order under
their hands, requiring the occupant of the land through or
by which such highway runs, and to which such fence,
building or other fixture shall be appurtenant, to remove the
same beyond the limits of such highway within thirty days ;
and they shall cause a copy of such order to be served upon
such occupant ; and every such order shall specify the width
of the road, the extent of the encroachment, and the place
or places in whlch the same may be, with reasonable cer-
tainty.

Section 103 provides that if the fence, building or other
fixture causing such obstruction, shall not be removed with-

in thirty days after the service of a copy of such order, such occupant shall forfeit the sum of fifty cents for every day after the expiration of that time, during which such encroachments shall continue.

Now the construction placed upon these provisions of the statute in the instruction above cited, and which construction, it is contended in the brief of the counsel for the plaintiff in error, is the true and correct one, is, that the legislature therein and thereby intended to prevent and guard against two classes of obstructions; one in case of an obstruction to a highway by fixtures like a fence, building, or something of that nature, and the other, where the obstruction is caused by something not regarded in law as a fixture, such as stone, logs, lumber, or things of that kind, placed in the highway. In other words, if a person deliberately builds a fence across a public highway, blocking it up entirely and preventing all travel over it, that the method for removing such obstruction is the one pointed out by section 102, the supervisors making an order requiring the occupant of the land to which such fence was appurtenant, to remove the same within thirty days, and if the occupant does not remove such fence within thirty days from the service of such order, he only forfeits fifty cents for every day after the expiration of that time during which such encroachments should continue. It appears to us that this view of the law is clearly untenable, and it would assuredly lead to strange consequences.

Suppose a person willfully places a log or a pile of stone in a highway, so as to obstruct the use of the same by the public, he would forfeit for every such offense twenty-five dollars. About this there is no question. But if he should deliberately and willfully build a stone fence across the highway, blocking it up entirely and rendering it impassable, then he would forfeit fifty cents a day for each day the fence remained after the expiration of thirty days within which he was ordered to remove it. And the reason given for this strange difference in the two cases, and of the legal consequences attending them is, that in the one case the obstruction is caused by a pile of stone placed in the highway, while in the other, the stone is laid up in a fence so as to be-

come a fixture. We cannot believe the legislature intended any such thing, or that the law should have any such construction. Undoubtedly the gravamen of the offence mentioned in section 101, consists in the *willful* obstruction of a highway, whether that obstruction be by means of a fence or by something not permanent, not a fixture. A person might place a load of wood or stone, or a pile of lumber within the limits of a highway, in such a manner as not to interfere at all with the full and free use of the road by the public; and we do not think the legislature intended subjecting a party who should do this, to the payment of the statute penalty of twenty-five dollars. The object of the statute unquestionably was, to secure the free use and enjoyment of the highways and streets to the public, by punishing a willful obstruction of them by a suitable penalty. And obstructing a highway by a fence is quite as injurious to the public, and quite as inconsistent with its proper use and enjoyment, as it would be to obstruct it with a pile of stone or logs, or things of that character. The encroachments spoken of in the next section of the statute, are evidently those not willfully made for the purpose of obstructing the highway. They are those encroachments upon a highway which a person might make from inadvertence or carelessness, without intending to obstruct the street. Hence the reasonableness of the statute in prescribing that the supervisors should make and serve an order upon the occupant of the land through which the highway runs, requiring the obstruction to be removed, and giving ample time to remove the same before any penalty is incurred; while the penalty incurred is but fifty cents for every day the encroachment continues after the expiration of the time given to remove it. And under the previous section, whoever should willfully obstruct a street, would forfeit a sum not exceeding twenty-five dollars. The difference in the penalty imposed in the two cases clearly indicates the distinction which in reason and justice ought to be made between a willful obstruction of a highway and an encroachment upon it not willful; and a distinction which we think the legislature intended to make in the statute. We cannot believe they in-

tended to provide that where a person should willfully build a fence across a highway, stopping the travel upon it entirely, such fence might be suffered to stand for thirty days after the service of an order of the supervisors requiring its removal, without any penalty incurred. This is giving the statute a most unreasonable construction, and one not authorized by its language. See *Fowler vs. Lansing*, 9 Johns., 349; *Hart et al. vs. The Mayor, Aldermen, &c. of Albany*, 9 Wend., 571; *Wetmore vs. Tracy*, 14 id., 250; *Dygert vs. Schenck*, 23 id., 445.

The highway where the fence was erected, is upon a prairie, and, it appears from the evidence, has been more or less travelled for twenty years. The travel has, however, sometimes varied twenty or thirty rods north of where the road now is, but still there has always been some travel over the *locus in quo*. The court charged the jury in substance, that if the defendant built a fence across the main traveled track of a legal highway, he was liable; that there might be a legal highway by a use of the same for twenty years; that if for twenty years before the commencement of the action, there had been a track where the obstruction was placed, and some travel on it, this would render it a legal highway, although there were many tracks traveled, occupying a width of even thirty rods, and the main travel might have been ten or twenty rods north of what is claimed now to be the highway. It is insisted that this charge is erroneous, but we think it substantially correct, when applied to the facts of the case.

This court has already decided that the use of a highway by the public for twenty years was conclusive evidence of dedication. *Lemon vs. Hayden* [*ante*, p. 159]. This general proposition is not controverted by counsel, but it is contended that it cannot rightfully apply to this case, for the reason that the proof shows that the alleged highway was over an open prairie, and that the travel was not confined to any one track, but varied many rods north and south of the road. It is objected, that the court might have charged, with equal reason and propriety, that by an uninterrupted use of twenty years, the public had acquired the right of

travelling over forty or fifty rods in width of the prairie. This conclusion is not a legitimate or necessary deduction from the charge of the court. There were circumstances in the case sufficiently indicative of an intention on the part of the plaintiff in error to treat the particular track across which the fence was built as the proper highway. The witness McMichael states that when he purchased the land along which part of the road was, *Wyman* said if he furnished one-half of the road, witness must pay for the other half, and that *Wyman* offered to sell him all the land lying north of the road in question. Now, after the plaintiff in error has seen fit to treat that particular track as the highway that the public might and should use, accompanied with acts which showed that he expected the travel would be confined to it, and would not be permitted to extend north and south of that road, we think he cannot be permitted to complain, if the public and the courts also consider the *locus in quo* a highway, whatever rights might have been acquired on the other parts of the prairie. The use of the highway has been uninterrupted for twenty years. The public does not claim the use of any other highway there. Even if other tracks have been used by the public, those tracks have been abandoned or closed. And whether the public acquired any right to travel over the hill, or on the bluff north of the track now claimed, it is not necessary to decide. It is sufficient to say, that no such right is insisted upon, and that the land north of the road has been fenced for three years. We therefore think the charge of the court was correct, in view of the evidence. The court, likewise, in connection with this charge, instructed the jury as to what was necessary to constitute a dedication of a highway; that the defendant must have done some act with the intention of dedicating this land for a highway, and that the dedication must have been accepted by the public. We think there was testimony in the case bearing upon the question of dedication, and that the law upon this point was correctly given.

On the whole, we are of the opinion that the judgment of the circuit court is correct, and should be affirmed.